The next case for argument is Katelyn Webb et al. v. Chelsea Smith et al. Good morning Mr. Gillum. Good morning sir, how are you? May it please the court. My name is Lucian Gillum. I represent the Webb and a lawsuit against the Department of Human Services and various individuals working for them. We have two types of claims. One for procedural due process violations. The other for seizure of their children without probable cause. Going to the issue of procedural due process first. You still have a claim against the statute, don't you? Yes sir, yes sir we do. We are claiming the statute is unconstitutional as it's written. So on the issue of procedural and it's a procedural due process challenge. The issue is that whether or not the state can take in the Webb's case your children for 28 days without having a hearing or in the Lay's case and as is permissible under the statute up to 12 days without having given the parents a chance to be heard and object to this. Let me ask you, are the defendants that you sued, are they responsible for the delay or is it the court system that you can't sue responsible? I think that the defendants that we sued are responsible for the delay. What did they do to cause the delay? Well first of all you've got a set of regulations and supervisory liability. Well first of all if you're talking about official past capacity claims seeking injunctive relief only under 1983, the state of Arkansas are the ones that created a statute that allows for children to be 12, seized for 12 up to 12 days without the parents having an opportunity to be heard. So there's that. Next we've sued Misha Martin. That's your facial challenge. That's the facial challenge yes sir. Next you have Misha Martin and Cindy Gillespie who are the head of DCFS and then the parent organization DHS who basically are training people, supervising people, accepting conduct and helping to create regulations where children can be held for up to 12 days and as the complaint alleges and has happened to Ms. Webb, they frequently exceed the 12-day period. Then finally on the caseworkers, that's a little bit more interesting of an allegation. Mr. Holmes found out because he considered that the caseworkers had started the process in a timely manner. They don't have the ability, I mean they cut to the chase, the holding was, but they don't have the ability to make the judge set a case for a hearing. Isn't that right? That was what Judge Holmes found, yes. So what's wrong with that? Why is that wrong? What's wrong with that is that it's not consistent with the law from the eighth circuit or the other circuits that we've cited. If you look at the cases that I've cited, what they focus on is when the hearing began, not when the process began and what they indicate . . . But you've got to be, you've got to have an effort. Part of your case includes cause, right? That is that a defendant did something. I mean that's part of every case. So what is it here that caseworkers did or didn't do that they could have done that led to a constitutional violation assuming there wasn't one? Well, what they did is they seized the children and they didn't see that a hearing occurred within a timely manner 28 days from Ms. Webb. But I'm not sure that they had the ability to do it. And one of the things that flummoxed me with your claim to get to Judge Arnold's point is why not sue the lawyer who handled it within DHS? I mean the thing is the social workers presented the case and then I think the lawyer took like what six, seven, eight days before filing at least with respect to one of them. I think it was the Webb's case in court. So why not go after the lawyers rather than social workers? Well, for one thing, the social worker is still involved in that process. She knew when she did that affidavit that Ms. Webb was going to be out inside of five days. She knew that the only basis for these children being seized was that Ms. Webb had been jailed for contempt for five days and that by the time they were going to be proceeding along these lines to get an order approving a seizure of the children that Ms. Webb would already be out. In other words, that the only basis for seizure would cease to exist. That's a different kind of claim. That's a claim against these social workers for falsifying evidence or for seizing the child and contrary to the Fourth Amendment. Well. Which is a different claim from your 14th Amendment. Isn't that right? What, what, what? The probable cause, the lack of probable cause. Yes. Yes, sir. That, I mean that's. That's, you're really talking to the probable cause claim there, not the due process claim. Well, I would disagree. I think if they give false testimony, that implicates due process, but the other thing is that if they know that their basis. But not procedural due process. Well. But in any event, it's a different claim from the claim against them for not getting the hearing going. The other, you know, there's another point here. Yeah, it is a distinct point. Even if they didn't, even if they didn't operate the statute according to the way that it should have been operated, even though they didn't follow the statutory procedures, that doesn't establish a constitutional violation in and of itself because the, the question is whether what they did or didn't do violated due process as required by the 14th Amendment, not whether what they did or didn't do violated the Arkansas statutes, right? Well. That's a point that seems to be lost in this. I mean, the, the, the issue on a procedural due process claim is, did they get process in a meaningful time and manner? Correct. You don't get a hearing for 28 days. You didn't get process in a meaningful time and manner. But that's different from not following the statute. Yes, that's distinct from not following the statute. It's not, that's just the state. But that's just the state, a violation of state law. You have to show that what they did, even if they didn't follow the statute, violates the 14th Amendment, violation of due process. Well, yes. I mean, you have to show that they didn't. The statutory, I'm sorry, but the statutes of the state of Arkansas don't define what due process requires, is what I'm saying. Well, I would. They don't establish a mere violation of state law. I guess I shouldn't put it that way. A violation of state law alone will not establish a violation of a federal constitutional right. I would agree with that. Okay. I would agree with that. But that point seems to have been lost in there somewhere. Well, I mean, the, the issue we're focusing it on is whether or not there was a constitutionally permissible delay in having a hearing. And we don't think that a 28-day or 12-day delay is a constitutionally permissible delay. Now, if you look, I mean, one argument you're raising here that I'd like to address is that you're kind of saying, well, the caseworker, what could they do? You know, it's, you know, they're helpless. And that is just not the way the 8th Circuit or the other circuits have addressed this issue. You know, in Hayes v. Faulkner County, which involved, you know, it was an arrest rather than a seizure of a child. But it was a seizure of a person. The defendants tried to say, well, it's the court system. It's not us. They've got a will call policy. They're not calling people timely. Not our fault. And what the 8th Circuit said is that you can't hide behind the court having a will call policy, quote, by delegating the responsibility of taking arrestees promptly before a court. In other words, if you seize kids ex parte without giving the parents a chance to object and have a hearing, then you've got an obligation to get that set before court and have a hearing. In other words, if the judge, as he did in this case, bumped Ms. Webb's hearing, they should have been objecting. The caseworker is still the caseworker on that case. They should have been doing something. They should have been getting with their attorney to see that something got done. Suppose, though, that they filed within two days. They filed within two days. The attorneys did their job. The social workers did their job. And then we still have a 28 day delay. The court just didn't do its job. Well, I don't. Would you bring that? Would you be making the same claim? Would the social workers be responsible? I would likely be bringing the same claim under Hayes v. Faulkner County, which says that they can't put it off on the court system. They've got an obligation. So even if they do, so this is what's presenting the problem. So even if they do everything they're supposed to do, you still hold the social workers responsible. I think that they could go to attempt to get a hearing before a different judge. I think they could seek a writ of mandamus from the Arkansas Supreme Court. I think there are things that they can do to see that this gets taken care of. And it's just, I mean, that's such an outlier. I mean, I mean, it's conceivable such a thing would happen. But it's very difficult for me to believe that if the state goes to the state court judge and says, look, you're violating this kid's and this family's constitutional rights. And, you know, you've got to do something. You've got to set a hearing now. It's just very difficult for me to believe that that's actually going to happen. And it's certainly not the situation in this case. Counsel, I want to ask a follow up question. The jurisdictional arguments, I think that the district court kind of struggled with them, which is why you have the reconsideration order. I think in the end, the district court might have gotten every jurisdictional issue wrong. And one of them affects you, which is the injunctive relief. In particular, can you explain to me how your client had standing after to file this action after all of this was over? Like the kids have been returned. That's my understanding. So I'm trying to figure out how there was standing. Yes, sir. On standing. And this is the injunctive relief. Right. On standing, you have a few different ways. One is, I think that if you have a ongoing unconstitutional policy that violates individual right, individual's rights, they can seek declaratory relief. Next issue is that in this is a class action where you have class allegations brought the requirements of standing are relaxed. And I think the best example was not actually cited in my brief. I just found it recently. It was County of Riverside versus, I cannot remember, but it's where the Supreme Court in the early 90s said that you have to get people to a probable cause hearing after they're arrested within 48 hours. And the individuals that were suing had gotten their probable cause hearing. They've been mooted out, but they were still allowed to sue under that case, even though they've been mooted out before the class was certified. But this is different from mootness. See, that's where I think the district court got wrapped around the axle. Mootness is when the plaintiffs originally had standing, and then something happened to take away their standing. Standing is where you didn't have the standing in the first place. Mootness is the standing in the time frame. And my problem is, is when you filed this action on behalf of the plaintiffs, they already had their kids back. It'd be different, and we'd be talking about mootness if you filed while their kids were being held, and then they were returned. And my response to that is two things. One is, I don't get to cite Roe v. Wade very often, but capable of repetition, yet avoiding review. And I think the standard there actually applies better in this case than it did in Roe v. Wade. The problem you have there, though, and I don't want to belabor this, is that that applies to mootness, not standing. So you're still kind of stuck. Standing, there really aren't exceptions to. And then the last issue is that we amended our complaint to allege a chilling effect for the lays. The reason we had to amend it is that the original standing issues the defendant had raised did not go, they went to whether or not there was an injury, which was kind of a ridiculous argument. But we amended to allege a chilling effect for the lays in that you have increased likelihood of encounters with DHS once you have one. They had an adult child who had made, who had become adult, who had made false allegations. They want to maintain the relationship, but they've got to worry about losing their children for, you know, 12 days, a month, whatever, again, if this continues. So we'd amended the complaint to allege possible future legitimate fears of injury there. I'm going to reserve the rest of my time. Thank you. Mr. James. Good morning, your honors. My name is Robert James and I represent the appellee and Stacey Howe and Chelsea Smith in this appeal. They are the DHS caseworkers in this case. The DHS officers are Missy Martin and Cindy Gillespie, the DHS officers. This court should affirm the district court decision for three reasons. One, the juvenile court, not the DHS caseworkers, are responsible for setting and conducting a post hearing, post deprivation hearing in this case. The second is that the appellant's claims are barred by the Rucker-Feldman doctrine. And third, the Arkansas statutes are not unconstitutional. The appellant's due process rights were not violated by the caseworkers because they did not have the authority to schedule post deprivation hearings. So how does the plaintiffs in this case get relief if this is happening continuously? And I don't know that it is. That's not necessarily an allegation here, but it's happening. He seemed to suggest this is happening all the time. How do the plaintiffs who have their constitutional rights deprived, how do they get relief here if they can't go after the circuit court? Well, my clients did what they're supposed to do. They filed affidavits within two days of the removal of the children from the parents. The other reasons for delay, he would have to look at the other reasons for the delay of the post deprivation hearing. The two days was prompt and they had no further involvement in the procedure of the case, the DHS caseworkers. The district court correctly held that the caseworkers were not liable for the delay and alleged violations of due process. It was the juvenile court, not the caseworkers that had the authority to set the hearings. The district court correctly looked to whether the caseworkers promptly initiated judicial proceedings after the children were removed. The district court correctly found that the caseworkers properly initiated the proceedings pursuant to ACA 12-18-1001. Regarding the Webb case, the facts show that once the caseworker signed the affidavit, her involvement in the case was finished. A juvenile court jailed Webb to begin with for contempt and ordered DHS to seize her daughter because there was not an appropriate caregiver. She didn't have a duty to follow up with the lawyer and make sure that the complaint or the action was initiated in Arkansas Circuit Court. Her duty, which was discharge, was that she had to file the affidavit with the reasonable suspicion that the safety and the health of the children was in jeopardy or in danger and that was their duty and the caseworkers signed the affidavits. They supported the petition for emergency relief or custody and at that point, the DHS caseworker discharged her duty. What about to the claim, as I read the complaint, that both of these caseworkers falsified information to create probable cause? Yes, yes, Your Honor, and that is something that is- That's a separate claim here. Yes, that's included in, that's in the record. The affidavit that's signed by Ms. Smith, the caseworker Ms. Smith, shows that the mother was incarcerated. But the claim is that she wasn't and that Ms. Smith knew that she wasn't. No, well, the affidavit by Ms. Smith is that the child was, that the mother was incarcerated at the time of removal. I think what they're saying is she was not incarcerated at the time the affidavit was signed. Okay, good. I mean, thanks for that explanation. So why is that not a claim? That's not a claim against the DHS worker? They knew it at the time. I think the claim is that she knew it at the time the affidavit was submitted. No, she said that she was released at the time. In the affidavit? Yes. Okay, so what was that claim? That claim was that she, the truancy, the reason why she was incarcerated- I mean, the claim that the plaintiff is making with respect to the false claim of probable cause. That claim is that the caseworker falsified the affidavit saying that the mother was incarcerated. Okay, so why is that claim not a viable claim aside from these claims with respect to their failure to get hearing properly said? Well, I keep going back to the affidavit because the affidavit does not say that she was incarcerated at the time. It was that she was incarcerated. I'll take a closer look at the record on that. I don't want to take any more of your time on it. Thank you. The caseworker was neither a party to the juvenile court proceeding nor was she a client in the state court proceedings. The case was adjudicated from the testimony and the exhibits, the statements of the witnesses and the statement of counsel in the juvenile court probable cause hearing. So we have an adjudication order at that time. The district court correctly found that the caseworker was not the party responsible for the delays. The district court correctly found that there was an adjudication order that was entered on July 26th and that that order was appealable pursuant to Arkansas appellate procedure. The facts in the Lay's case are similar to that in the Webb. Two days after the children were removed, the caseworker signed an affidavit stating that the health and safety of the children was in danger and she discharged her duty at that time. At that point on the same day, DHS petitioned for emergency custody of the children. The appellant's claim of no probable cause was fully adjudicated at that probable cause hearing by the juvenile court and it was found that there was probable cause at the time of removal and that there were emergency conditions at that time. Counsel, I want to get into the Rooker-Feldman because I said that I think the district court got multiple jurisdictional issues wrong and I'm pretty darn sure that the Rooker-Feldman is wrong too and I'll tell you why. Rooker-Feldman is perhaps one of the most misunderstood doctrines, but here it requires a state court judgment to have caused the entry and here the entry is all the things we've been discussing. It's the fact that, at least the alleged entry, right? It's the fact that they were removed from the home, that they falsified evidence. If anything, once the children were returned, that sort of alleviated the entry and the final judgment sort of, well, there wasn't a final judgment. The final adjudication alleviated the entry. So I don't know how the state court judgment could have possibly caused the entry here. So I don't know why Rooker-Feldman is even being cited by the district court, to be quite honest. Well, it was adjudicated in a state court and there was a state court decision that served as a judgment for Rooker-Feldman. But it wasn't a final judgment. That's the other problem I have with it. The whole reason for Rooker-Feldman is to avoid an appeal in federal court from a state court decision and this adjudication, from what I understand, is not appealable because it's not a final judgment either. So there's really two problems. One is the harm didn't come from the state court, so-called judgment. The other is that it wasn't a judgment at all. Okay, the first thing is that the decision, that was the state court decision, was appealable. That was the adjudication of July 26 for the Webb case. It was May 13th for the Lays case and those were final decisions that were adjudicated by the hearing, exhibits, testimony of the witnesses and that was adjudicated and then that was a final resolve claim and therefore the Rooker-Feldman doctrine would apply because that was a state court claim and intrusively intertwined. The plaintiff doesn't trace his injuries to that judgment, does he, in this case? Well, he's saying that he, that there was not probable cause in the first place to remove the child. Then there was not probable cause from that probable cause hearing itself and so they're claiming that they were injured from that for the delay constitutionally and the Rooker-Feldman, the district was correct because it cited precedent that the Rooker-Feldman doctrine is confined to cases brought by state court losers complaining of state court decisions rendered before the federal court proceedings commenced. So therefore we had the state court decisions. We had dismissal orders that were entered in October 5th and then in December, there was a federal lawsuit filed and then October, I believe it was 7th and then on the 13th, the federal court lawsuit was filed. Let me ask the question one more time to try to get at this. They're not complaining about something that happened with respect to the judgment. I don't read this complaint as this judgment is the reason why we were harmed. I don't read any of their allegations to be about that. I read their allegations to be, I was harmed because these kids were removed and they didn't work fast enough. Maybe the judicial system didn't work fast enough, the social workers, the lawyers didn't work fast enough, whatever, but I don't, unless you can cite to me some harm from that state court judgment they're complaining about, I don't think the Rooker-Feldman doctrine applies. Right, I understand your honor. The appellants are alleging that the children were taken into custody without probable cause and because of that, these allegations are barred by the Rooker-Feldman doctrine because they depend on overturning the holdings of that state court and that's the holding that probable cause existed at the time the children were taken into custody. Is that the claim against, okay, I'm sorry to keep coming back to this one, but the claim against the caseworker for falsifying information is a separate and distinct claim that is no different from a claim against police officers for falsifying information in warrants. Isn't that true? Yes. Why would that be barred by any adjudication on the whole premises that, okay, maybe there was probable cause here on the evidence, but the evidence was falsified. So that's the claim. Well, your honor, they're claiming that that's related to due process and a due process. That's right, yeah. Well, they're claiming there was an unlawful seizure of the children, contingent seizure of the children, it's a Fourth Amendment claim as I read it, but however you characterize it, point is that it's simply a claim about the deliberate falsification of a record. Right, well, we're... That's not adjudicated in the probable cause hearing, is it? The judge, that's part of the evidence, yes. Right, but the false, but the perjurious aspect is not really an issue. Well, the claim that they made is there's not facts that state a claim that relief can be granted for that claim that they're making. And does that help you out? Yeah, I have a factual question. I just wanted to, real quick, because I didn't ask, this is my fault, I didn't ask the right question. On the final adjudication, my understanding, and maybe I'm wrong about this, but my reading the record indicated that the adjudications were dismissed at the department's request, that there was no final adjudication. And feel free to tell me I'm wrong about that, but I just want to, I want to be sure because I have a notation on my notes that suggests that. Right, it's a little bit confusing. The adjudication order was entered and that, according to Arkansas rules of appellate procedure, that is a appealable order. Okay. And then the cases, the reason I emphasize when the cases were actually dismissed is because that's when you have a final conclusion of that case. And was it then dismissed by the department? It was dismissed on a non-suit by the department, yes. Okay, and that doesn't affect the finality of the adjudication? No, I mean that's the finality of the case, not the adjudication. Also, based on the allegations in the amended complaint, the state court proceedings are complete for purposes of Rucker-Feldman, and the juvenile court held that probable cause existed to remove the children from the parents' homes. This was challenged in juvenile court and the appellants lost, and that applies in a case that has ended and has concluded. The juvenile court finally resolved the claims conserving probable cause. In regards to the third point, that was the reasons for affirming the decision is that the district court was correct in not setting a bright line rule regarding promptness of scheduling the probable cause hearing. The burden of proof was on the appellants as the parties challenging the legislation and proving its unconstitutionality. And any doubts should be resolved in favor of the statute's constitutionality, and there is a strong presumption that these statutes are constitutional. I'll emphasize that there is no bright line rule that exists as to the promptness of the hearing, and the district court declined to set a bright line rule. We're asking that that be affirmed. And the, this court should affirm the district court decision for the three reasons that I stated. One is that the juvenile court- One thing, I'm sorry to interrupt, one thing that interested me about the last thing you said was that the district court was really being asked to enjoin this statute on the ground that it was facially unconstitutional. Isn't that right? Yes. And it seems to me that the court took that to mean that the plaintiffs wanted the court to write, essentially write a statute that was constitutional, which of course the court wasn't going to do. But the refusal to rule, as I really read it, is something that is a sort of a gap in the case because, would you agree with me that in order for the statute to be facially unconstitutional, some court would have to hold that there are no circumstances under which the application of the statute satisfied the 14th Amendment? Yes. And that argument had not really been advanced with any great clarity. That's not your fault. I'm just suggesting it's a difficulty in the case. I think what the court was saying was essentially that there was no, on this record, it would be difficult to say that there are no certain set of circumstances under which this statute could be applied as written that would not violate the 14th Amendment. Is that the way you read the opinion? Yes, Your Honor. That's the language that he used was the bright line rule. Okay. Thank you. Okay. We ask that this court affirm the district court decision for the reasons and the basis that I've stated. Thank you. You're welcome. Thank you, Mr. James. Mr. Gillum, I think you have a little rebuttal time. Yes, sir. On Rooker Feldman, you were correct about the injuries not from the state court order. Also, I believe he's misunderstanding something, but there's two kinds of orders in this case. One, probable cause. In the case that we cited, Johnston v. Arkansas DHS, that is not an appealable order. It's not a final order. The other case, the other kind of order was a dismissal without prejudice. We're not state court losers, and it's also not an appealable order pursuant to Beverly Enterprises Arkansas v. Hilliard. Now, going to what Chelsea Smith did, one thing I would like you to note is that appendix pages 104 and 105, she was texting. Her involvement did not end with her affidavit. She was texting our client telling her that the hearing was being continued by the judge on, I think, July 5th or July 7th, or no, July 12th. So her involvement was not done. Also, when she filled out that affidavit stating that the kid needed to be taken into custody through an ex parte order, she knew that our client would be released the next Monday, that as of that next Monday, the next business day before court, there wouldn't be any need for them to keep custody of that child. They should have just returned the child to the mother rather than go through that process. Furthermore, she had an obligation. She had an affidavit that she knew was incorrect, that she did not correct with the court for a period of about 20 days. Which is a significant problem when you're holding somebody's child hostage. May I ask a question, sir? Yes, sir. If the claims against the case workers turn out to be claims that we decide are not valid, just stay with me for purposes of hypothesis. Yes, sir. Would that necessarily undermine the claims against Martin and Gillespie in total or not? I don't think it would, sir. There are separate claims against them. One is, well, and both, as I understand it, both are personal and official capacities. One is you're seeking an injunction against this, what you call the delay policy, the will call, is that what you call it? Yes, sir. And the other is a personal claim for failing to supervise Halk and Smith, is that right? Yes, I think the claims against the supervisors could survive even if the claims against the case workers fail. Yes, sir. So why would the supervisory claim survive if the underlying claims against the case workers would not? Well, because one thing, this is an agency policy that they're enforcing. Okay, so it's a simple due process. They're talking, you're talking now about the official capacity claim. Well, both. Is that right? You want an injunction against what you're calling this policy? Yes, sir. Is that correct? Okay. We are, we do want an injunction, yes, sir. Thanks very much. Thank you. You're welcome. Thank you. Thank you, Mr. Bealen. Counsel, we appreciate your appearance and arguments today. Case is submitted and will be decided in due course.